UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAMES F. MCMILLIAN,

Plaintiff,

v.

NEW YORK CITY TAXI AND LIMOUSINE COMMISSION et al.,

Defendants.

**MEMORANDUM AND ORDER**

20-cv-5722 (LDH)

LASHANN DEARCY HALL, United States District Judge:

James McMillian ("Plaintiff"), proceeding pro se, brings the instant action against his former employer, the New York City Taxi and Limousine Commission (the "Commission"), Carmen Rojas, Eldwrage Joseph, Roonald Sobers, Diana M. Penneti, Louis Molina, Noreen Hollingsworth, Linda Andrews, Joyce Yearwood-Drury, Ira Goldapper, and Edwin Carabollo, asserting claims for defamation and for retaliation, discrimination, and hostile work environment under federal and state law. Defendants moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint in its entirety.

## BACKGROUND[1]

Plaintiff was appointed to the Commission as an Operations Communications Specialist on June 30, 2013. (Am. Compl. at 21, ECF No. 6.) Plaintiff claims he was mistreated by the

[1] The following facts are taken from the complaint, the amended complaint, Plaintiff's opposition papers, and the exhibits Plaintiff attaches to the amended complaint, and are assumed to be true for purposes of deciding the instant motion. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Aponte v. Buono*, No. 11-cv-1077, 2011 WL 6812924, at *3 (E.D.N.Y. Dec. 28, 2011) (considering new facts alleged in a pro se plaintiff's opposition papers on a motion to dismiss as the new factual allegations "effectively amended" complaint); *Elliott v. Nestle Waters N. Am. Inc.*, No. 13–CV–6331, 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014) (considering, among other things, an exhibit attached to an opposition brief in part "in light of the policy permitting courts to consider facts alleged for the first time in a pro se plaintiff's opposition to a motion to dismiss"); *Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246–47 (S.D.N.Y.1998) ("Although material outside a complaint generally is not to be

Commission, specifically Joseph, the chief of the Commission, and other employees of between 2016 and 2018. (*Id.* at 10.) The mistreatment began soon after Plaintiff and Stephanie Kooma, an officer with the Commission, began a romantic relationship. (*Id.* at 10.) Other employees were not happy about their relationship. (*Id.*) At some point, Kooma was banned from the Commission's radio room, an action not taken against other employees. (*Id.*)

As best can be discerned by the Court, Plaintiff alleges the following facts in support of his claim that he was treated differently based on his gender (*id.* at 11):

- At some point, Plaintiff was falsely accused by Caraballo of filing false sick leave documents and for using profanity against Joseph. (*Id.* at 9.) Joseph additionally stated Plaintiff used profanity against him, resulting in Plaintiff losing his job and his pension. (*Id.* at 11.)

- Two women were not reprimanded for reports they wrote nor did they receive official dress code violations. (*Id.* at 9–10.) In contrast, Plaintiff was told by Sobers at some point that he could not wear what he was wearing based on a Commission policy circulated in an email Plaintiff did not receive. (*Id.* at 10.)

- Two other employees carpooled together to work. (*Id.*) However, Plaintiff was told by Caraballo he needed permission to carpool with Kooma. (*Id.*)

- On October 23, 2017, Joseph and other employees held a conference with Plaintiff concerning Plaintiff's late arrivals to work. (*Id.* at 11.) Plaintiff, however, was late only four times in four years. (*Id.*) Joseph stormed out of the meeting when Plaintiff asked about the Commission's policy. (*Id.*) Plaintiff reported Joseph's behavior to Molina and Plaintiff was subsequently removed from "the radio room" because of his complaint. (*Id.*)

- Plaintiff requested a barcode on his ID card to help keep track of employee use of certain equipment, but his request was denied in what he calls an "aggravating" email from Molina. (*Id.*)

- On October 23, presumably of 2017, Joseph threw Plaintiff's portable radio on Plaintiff's work desk. (*Id.*) Plaintiff reported this to Molina. (*Id.*) Due to stress caused by Joseph's actions, Plaintiff asked to leave to go to the hospital because he had a headache. (*Id.*)

---

taken into consideration on a motion to dismiss, the policy reasons favoring liberal construction of pro se complaints permit a court to consider allegations of a pro se plaintiff in opposition papers on a motion where . . . consistent with the complaint."). Citations to the complaint and amended complaint refer to the pagination assigned by the Court's ECF system.

- At some unspecified point, Andrews wrapped her arms around Plaintiff and shook him back and forth until his glasses almost came off. (*Id.* at 12.) At another unspecified point, Andrews attempted to speak with Plaintiff while he was wearing headphones. (*Id.*) Plaintiff told her Sobers said it was okay to wear headphones. (*Id.*) Andrews said, "I'll see about that." (*Id.*) Plaintiff was later sent an email stating he could no longer wear ear devices while working, while other employees who wore headphones did not receive similar emails. (*Id.*)

- Rojos sent Plaintiff an email at some point, informing Plaintiff he was serving provisionally as an Operations Communications Specialist. (*Id.* at 26.) Plaintiff was informed he could take an exam called the Qualified Incumbent Exam ("QIE") to qualify him to obtain permanent employment status with a civil service title. (*Id.*) Plaintiff passed the exam but was denied a permanent civil service titled job. (*Id.* at 10.)

Ultimately, the Commission terminated Plaintiff in May of 2018. (*Id.* at 12.) Plaintiff filed a complaint alleging discrimination by the Commission and its employees with the New York State Division of Human Rights ("SDHR"). (*Id.* at 16.) The SDHR dismissed Plaintiff's complaint on December 11, 2018, finding no probable cause "to believe that the respondent[s] ha[ve] engaged in or [are] engaging in the unlawful discriminatory practice complained of." (*Id.* at 16.) On August 26, 2020, the Equal Employment Opportunity Commission ("EEOC") adopted the findings made by the SDHR. (*Id.* at 19.) Plaintiff initiated this instant action on November 19, 2020.

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss,

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs asserting civil right[s] claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Abandoned Claims

Defendants raise several arguments to which Plaintiff failed to respond. First, Defendants contend that Plaintiff's claims are partially barred by the election of remedies because they repeat the same facts and claims that were litigated with the SDHR. (Defs.' Mem. in Supp. Defs.' Mot. to Dismiss ("Defs.' Mem."), at 5–7, ECF No. 27.) Second, Defendants

maintain that any claim Plaintiff has under Title VII of the Civil Rights Act of 1964 for conduct prior to February 14, 2018, are time barred because Plaintiff failed to bring the claims within 300 days of the discriminatory act. (*Id.* at 7.) Third, Defendants argue that Plaintiff's claims against Goldapper and Hollingsworth should be dismissed because Plaintiff does not allege any actions taken by those two Defendants. (*Id.* at 8.) Fourth, and finally, Defendants move to dismiss any claim made under Title VII against the individually named Defendants because there is no individual liability under Title VII. (*Id.* at 9.) Plaintiff does not address any of these arguments in his opposition papers. Accordingly, Plaintiff's claims under Title VII predating February 14, 2018, his claims based on the same facts raised in his SDHR complaint, and his claims against Goldapper and Hollingsworth, as well as his Title VII claims against the individually named defendants are dismissed. *See, e.g.*, *Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 46 n.1 (2d Cir. 2018) ("We affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by [pro se plaintiff] when she failed to oppose them in her opposition to Ameriprise's motion to dismiss."); *Sealy v. State Univ. of New York At Stony Brook*, 408 F. Supp. 3d 218, 225 (E.D.N.Y. 2019) (dismissing pro se plaintiff's claims as abandoned when plaintiff failed to respond to arguments made in motion to dismiss), *aff'd*, 834 F. App'x 611 (2d Cir. 2020).

## II. Title VII

Even if Plaintiff had not abandoned his claims, the Court finds Plaintiff's allegations with respect to his Title VII claims to be insufficient.

### a. Discrimination

To establish a claim of discrimination based on his gender in violation of Title VII of the Civil Rights Act of 1964, a claimant must show that: (1) he belongs to a protected class; (2) he

was qualified for the position; (3) he suffered an adverse employment action; and, (4) the adverse employment action occurred under circumstances giving rise to an inference that the employer acted with discriminatory intent. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). At the motion to dismiss stage, a plaintiff need not allege facts that satisfy every element of a Title VII claim. Rather, a plaintiff need only plead facts plausibly alleging that the employer took an adverse action against him at least, in part, for a discriminatory reason. *See Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (summary order) ("To survive a motion to dismiss, a Title VII plaintiff does not have to plead a full prima facie case pursuant to the first stage of the burden-shifting framework outlined in [*McDonnell Douglas Corp.*]; [ ]he 'need only give plausible support to a minimal inference of discriminatory motivation.'" (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).

Defendants contend that Plaintiff has failed to sufficiently plead any of the elements necessary for a discrimination claim. Without deciding whether Plaintiff pleaded the first three elements of a discrimination claim, the Court finds that Plaintiff fails to allege facts giving rise to an inference of discriminatory intent. At the pleading stage, a plaintiff may prove discriminatory motive either directly, by alleging facts that show an intent to discriminate, or indirectly, by alleging circumstances that give rise to a plausible inference of discrimination. *See Vega*, 801 F.3d at 87 (stating standard for proving an adverse employment decision was motivated, at least in part, by an impermissible reason).

Plaintiff alleges no facts establishing an explicit discriminatory motive by his employer. Plaintiff alleges that he felt "less than a man" when Andrews put her arms around him, that Joseph treated him "unfairly as a man working for the agency," and that Joseph stared at Plaintiff when he spoke to female employees. (Am. Compl. at 10–12.) These are conclusory allegations,

which, at most, reveal Plaintiff's own perceptions of being discriminated. That is not enough. *See, e.g.*, *Brodt v. City of New York*, 4 F.Supp.3d 562, 568 (S.D.N.Y. 2014) ("In reviewing the sufficiency of a complaint's allegations, a plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination" (quoting *Bickerstaff v. Vassar College*, 196 F.3d 435, 456 (2d Cir. 1999))).

Likewise, Plaintiff fails to allege a discriminatory motive indirectly. To allege a discriminatory motive indirectly, a plaintiff raises a prima facie inference of discrimination when he demonstrates that his employer treated him less favorably than similarly situated employees outside of his protected class. *See Palmer v. Shchegol*, 406 F. Supp. 3d 224, 232 (E.D.N.Y. 2016) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)). To do so, a plaintiff must establish that he was "similarly situated in all material respects to the individuals with whom [ ]he seeks to compare [him]self." *Id.* (quoting *Mandell v. Conty. of Suffolk & John Gallagher*, 316 F.3d 368, 379 (2d Cir. 2003)). Plaintiff alleges that, unlike Plaintiff, two women were not reprimanded for submitting subpar reports, for violating the company's dress code, and for wearing headphones while at work. (Am. Compl. at 9–10, 12.) However, Plaintiff does not allege he was similarly situated to these individuals such that his alleged treatment may be attributable to his gender. Absent such an allegation, Plaintiff's discrimination claim cannot proceed. Defendants' motion to dismiss is granted on this ground.

**b. Hostile Work Environment**

To establish a hostile-work-environment claim, a plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510

U.S. 17, 21 (1993)). A hostile work environment has both objective and subjective components. In other words, "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id*. at 321. In assessing the sufficiency of the allegations, a court must "consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id*. (quoting *Harris*, 510 U.S. at 21).

Defendants argue that Plaintiff's hostile work environment claim should be dismissed because Plaintiff does not provide any concrete examples of how such conduct was tied to his gender. (Defs.' Mem. at 13–17.) Defendants are correct. While Plaintiff asserts several factual allegations concerning his experience at the Commission, he fails to allege that any of this conduct occurred because of his gender. For example, Plaintiff alleges that he was falsely accused of filing false sick leave documents and for using profanity against Joseph. (Am. Compl. at 11.) But, he does not allege that the alleged false accusations were made because of his gender. Put another way, there is no nexus between Defendants' alleged conduct and Plaintiff's gender. This failure is fatal to Plaintiff's hostile work environment claim. *See, e.g., Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 158 (E.D.N.Y. 2015) (dismissal proper where "even construing all of the allegations as true and drawing inferences liberally and in favor of the pro se plaintiff, there is no factual basis upon which to conclude that any of defendant's actions were taken because of plaintiff's gender"); *Lucio v. New York City Dep't of Educ.*, 575 F. App'x 3, 5 (2d Cir.2014) (summary order) (affirming dismissal of hostile work environment claim where complaint pleaded no facts "that would allow a court to draw a

reasonable inference that Lucio was subjected to any mistreatment or adverse action *because of* her race" (emphasis in original)).

Accordingly, Defendants' motion to dismiss Plaintiff's hostile work environment claim under Title VII is granted.[2]

### c. Retaliation

To establish a prima facie claim of retaliation under the Title VII, a plaintiff must show: (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and, (4) there was a causal connection between the protected activity and the adverse employment action. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999); *see also Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 209 (E.D.N.Y. 2017).

To allege a "protected activity" under Title VII, Plaintiff need only "'have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII[.]" *Kessler v. Westchester Cnty. Dep't of Soc. Services.*, 461 F.3d 199, 210 (2d Cir. 2006) (citation omitted). Plaintiff alleges he "raise[d] [his] voice" concerning Joseph and other supervisors' treatment of him, and in one instance reported to Molina of Joseph "storm[ing] out of a conference and angrily thr[owing] [a] portable radio" at Plaintiff's desk. (Am. Compl. at 9, 11.) Plaintiff alleges he also complained to Sobers about Joseph's conduct. (*Id.* at 12.) However, Plaintiff fails to allege any facts showing a reasonable belief that he was opposing discriminatory practices made unlawful by Title VII. Put another way, while Plaintiff may have complained about his employer's treatment of him, he alleges no facts showing that these

[2] Defendants additionally argue that the conduct Plaintiff alleges does not rise to the level of a "severe or pervasive" hostile work environment. (Defs.' Mem. at 17.) Because the Court finds that Plaintiff has failed to establish a nexus between the alleged conduct and his gender, the Court need not decide whether Plaintiff's allegations rise to the level of an objectively "severe or pervasive" work environment.

complaints related to alleged discrimination. *Compare Roth v. Farmingdale Pub. Sch. Dist.*, No. 14-CV-6668, 2016 WL 767986, at *9 (E.D.N.Y. Feb. 26, 2016) (no retaliation claim where Plaintiff alleged only that he "advocated for better security and surveillance systems, solar panels, and energy efficient stage lighting to be installed" because "[s]uch actions do not constitute protected activity under Title VII"), *with Muktadir v. Bevacco Inc.*, No. 12-CV-2184, 2013 WL 4095411, at *1 (E.D.N.Y. Aug. 13, 2013) (finding plaintiff satisfied the first element of a retaliation claim where "he filed numerous internal complaints . . . as well as an external charge of discrimination with the EEOC" concerning comments his manager and co-workers made calling him, among other things, a "fucking Bangladeshi guy," "smelly Bangladeshi bum," and "smelly bum from the jungle"). Thus, Plaintiff has failed to allege that he engaged in protected activity.

Even if Plaintiff could establish that he engaged in protected activity, Plaintiff fails to allege a causal connection between his complaints and any act of retaliation. Where a plaintiff fails to plead a direct link between a grievance and retaliatory action, the plaintiff can demonstrate a causal connection "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Littlejohn*, 795 F.3d at 319. Plaintiff fails to meet that standard. That is, Plaintiff does not allege facts showing that he was terminated because of his complaints. Plaintiff does not provide specific dates on which he complained to others at the Commission such that an inference of retaliation may be established. Thus, Plaintiff has not stated a claim for retaliation. *See, e.g.*, *Marquez,* 406 F. Supp. 3d at 210 (dismissing complaint for failing to allege a causal connection between internal and EEOC complaints and alleged retaliation); *Anderson v. Davis Polk & Wardwell LLP*, 850 F.Supp.2d

392, 413 (S.D.N.Y.2012) (dismissing retaliation claims where there was "nothing to connect [plaintiff's] complaint . . . and the self-described retaliatory actions aside from the fact that plaintiff groups these actions underneath the heading of 'retaliation' in his [pleadings]"); *Dechberry*, 124 F. Supp. 3d at 154 ("Simply pleading that an adverse employment action occurred later in time than plaintiff's protected activity is insufficient to survive a motion to dismiss").[3]

## III. Supplemental Jurisdiction Over Plaintiff's State Law Claims

Plaintiff does not explicitly bring claims under state and local law concerning alleged employment discrimination or retaliation. However, reading the complaint liberally, and out of an abundance of caution, the Court construes Plaintiff to bring claims under state and local employment laws and regulations. Further, Plaintiff brings state law claims for defamation and for wrongful termination. Having dismissed Plaintiff's claims under Title VII, the Court must determine whether to exercise jurisdiction over Plaintiff's state and local law claims. "Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3)." *Reid ex rel. Roz B. v. Freeport Public Sch. Dist.*, 89 F. Supp. 3d 450, 460 (E.D.N.Y. 2015) (quoting *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 237 (E.D.N.Y. 2015)). The Court must "'consider and weigh in each

[3] To the extent Plaintiff brings a retaliation claim under the Family and Medical Leave Act ("FMLA"), courts consider FMLA retaliation claims and those under Title VII under the same standard. *See, e.g., Millea v. Metro-N. R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011) (holding that the "FMLA's anti-retaliation provision has the same underlying purpose as Title VII" and applied Title VII's standard for determining what constitutes a materially adverse employment action by an employer to the FMLA's anti-retaliation provision"); *Wu Zhang v. Brookhaven Sci. Associates., LLC*, No. 18-CV-4987, 2019 WL 5537248, at *2 (E.D.N.Y. Oct. 25, 2019) ("An inference of retaliatory intent" under the FMLA "can be established when there is a basis to conclude that a 'causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer.' This connection can be shown by a close temporal proximity in time between the protected activity and the adverse employment action."). Accordingly, Plaintiff's FMLA claim fails for the same reason his Title VII retaliation claim fails.

case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction' over pendent state law claims." *Id*. at 461 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "Once all federal claims have been dismissed, the balance of factors will 'usual[ly]' point toward a declination" of supplemental jurisdiction. *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 118 (2d Cir. 2013) (citation omitted). Here, because all of Plaintiff's federal claims have been dismissed, the Court declines jurisdiction over any remaining claims by Plaintiff and need not address Defendants' arguments concerning those claims.

**CONCLUSION**

For the foregoing reasons, Plaintiff's complaint is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
September 28, 2022

/s/ LDH
LASHANN DEARCY HALL
United States District Judge